IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ASHLEY T.,<br><br>Plaintiff,<br>v.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER REVERSING AND REMANDING ALJ DECISION**<br><br>Case No. 2:25-cv-00788-CMR<br><br>Chief Magistrate Judge Cecilia M. Romero |

All parties in this case have consented to the undersigned conducting all proceedings (ECF 6). 28 U.S.C. § 636(c). Plaintiff Ashley T. (Plaintiff), pursuant to 42 U.S.C. § 405(g), seeks judicial review of the decision of the Commissioner of Social Security (Commissioner or Defendant) denying her claim for disability insurance benefits (DIB) and supplemental social security income (SSI) under Titles II and XVI of the Social Security Act (Act). After careful review of the record (Certified Administrative Record (Tr.), ECF 13), and the parties' briefs: Plaintiff's Motion for Review of Agency Action (Pl. Br.) (ECF 17); Defendant's Response (Def. Br.) (ECF 22); and Plaintiff's Reply (Pl. Rep.) (ECF 23). For the reasons discussed below, the court hereby GRANTS Plaintiff's Motion for Review of Agency Action (ECF 17) and REVERSES AND REMANDS the decision of the Commissioner.

## I. BACKGROUND

Plaintiff was 32 years old on her disability onset date of May 1, 2021 (Tr. 23, 33). Plaintiff filed an application for DIB and SSI in July 2022, alleging disability due to: Pseudotumor Cerebri,

Fibromyalgia, Depression, Anxiety, Agoraphobia, Anemia, Chronic Migraine, Double Vision/Blurry Vision/ Severe Vision Loss, Clinical Exhaustion/Fatigue, IBS (Tr. 81).

The ALJ followed the Commissioner's five-step sequential evaluation process for disability claims and entered his decision on July 2, 2024 (the ALJ's Decision) (Tr. 20–41). *See* 20 C.F.R. § 404.1520(a)(4). The ALJ determined at step two that Plaintiff had the following severe impairments: pseudotumor cerebri and migraine without aura and without status migrainosus, and obesity (20 C.F.R. §§ 404.1520(c) and 416.920(c)) (Tr. 26). The ALJ determined that these medically determinable impairments significantly limit Plaintiff's ability to perform basic work activities as required by SSR 85-28 (Tr. 26).

The ALJ also determined that Plaintiff has the following non-severe impairments: restless leg syndrome, history of hernia, and disabling anxiety and depression (*id.*). In making this finding, the ALJ considered the broad functional areas of mental functions set out in the Listing of Impairments (Paragraph B Criteria) (20 C.F.R., Part 404, Subpart P, Appendix 1) (Tr. 26). The ALJ found mild limitation in understanding, remembering, or applying information; mild limitation in interacting with others; mild limitation in concentration, persisting, or maintaining pace; and mild limitation in maintaining oneself (Tr. 27).

At step three, the ALJ considered Plaintiff's visual impairment under Listing 2.02 and obesity pursuant to SSR 19-2p and found that neither criterion was met (Tr. 28). Of particular importance is the ALJ's consideration of Plaintiff's headaches under the listing for epilepsy, Listing 11.02 (Tr. 27). Although Plaintiff does not allege epilepsy as an impairment, she does allege headaches (*see* Tr. 81). While there is no listing for headaches, pursuant to SSR 19-4p, headaches "may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures), and [an ALJ] may find that [claimaint's headaches]

medically equals the listing." SSR 19-4p, 2019 WL 4169635, at *7 (2019). Pursuant to SSR 19-4p, the ALJ found that the criteria for epilepsy under Listing 11.02 were not met, and provided the following in support of his finding:

> Next, although there is no listing for headaches, pursuant to SSR 19-4p, I compared the claimant's signs and symptoms with listing 11.02 for epilepsy. However, the medical record does not reasonably support a finding of medical equivalence and no acceptable medical source designated to make equivalency findings has concluded that the claimant's impairments medically equal this or any listed impairment.

(Tr. 28).

The ALJ next determined Plaintiff had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) (Tr. 28-34). At step four, the ALJ found that Plaintiff was unable to perform past relevant work as a garbage collection supervisor (Dictionary of Occupational Titles (DOT) 909.13-7014)) (Tr. 33). Considering Plaintiff's age, education, work experience, and residual functional capacity, a vocational expert testified that Plaintiff had past work consistent with the following: Routing Clerk (DOT# 222.687-022), Garment Sorter (DOT# 222.687-014/), and Price Marker (DOT# 209.587-034) (Tr. 34). At step five, in addition to past relevant work and consistent with the vocational expert's testimony, the ALJ found at step five that Plaintiff could perform jobs existing in significant numbers in the national economy (*id.*). The ALJ therefore concluded that Plaintiff was not disabled and denied disability benefits (Tr. 35).

The Appeals Council then denied Plaintiff's request for review (Tr. 6), making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 20 C.F.R. §§ 404.981; 422.210(a). This appeal followed.

## II. STANDARD OF REVIEW

"On judicial review, an ALJ's factual findings [are] 'conclusive' if supported by 'substantial evidence.'" *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (quoting 42 U.S.C. § 405(g)). The substantial evidence threshold "is not high," and "defers to the presiding ALJ, who has seen the hearing up close." *Id.* at 103, 108. Substantial evidence is "more than a mere scintilla" and "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 103 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Under this deferential standard, the court may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *See Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). The decision is sufficient if it permits the court to follow the ALJ's reasoning. *See Garland v. Ming Dai*, 593 U.S. 357, 358 (2021) ("Reviewing courts, bound by traditional administrative law principles, must 'uphold' even 'a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" (quoting *Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 286 (1974))). If the evidence is susceptible to multiple interpretations, the court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

However, "[f]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed [are] grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quoting *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984)). Lastly, when reviewing under the substantial evidence standard, "'[t]he ALJ's decision should be evaluated based solely on the reasons articulated in the

decision.'" *See Ann S. v. Kijakazi*, No. 2:20-cv-00841-JCB, 2022 WL 204596, at *3 (D. Utah Jan. 24, 2022) (quoting *Robinson v. Barnhart*, 366 F.3d 1078, 1084–85 (10th Cir. 2004)).

## III. DISCUSSION

On appeal, Plaintiff asserts two primary errors in the ALJ's Decision: (1) at step three, the ALJ erred as a matter of law by failing to adequately evaluate whether Plaintiff's debilitating migraines equaled listing 11.02B and/or 11.02D, and the ALJ did not cure this error in his step four analysis (Pl. Br. 7–16); and (2) the RFC assessment is not supported by substantial evidence where the ALJ failed to account for all limitations resulting from migraine (*id*. 16–19).

### A. Step Three Standard

The ALJ determined at step two that Plaintiff had the following severe impairments: pseudotumor cerebri and migraine without aura and without status migrainosus (Tr. 26). The ALJ determined that these medically determinable impairments significantly limit Plaintiff's ability to perform basic work activities as required by SSR 85-28 (Tr. 26). "When the ALJ finds at step two that the claimant has a severe impairment(s) that significantly limits the claimant's ability to do basic work activities, "the ALJ must determine at step three whether that impairment or combination of impairments meets or equals 'a condition 'listed in the appendix of the relevant disability regulation.'" *Lindsay M. v. Kijakazi*, No. 2:21-CV-02063-EFM, 2022 WL 612452, at *5 (D. Kan. Mar. 2, 2022) (quoting *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009)). The claimant, however, "bears the burden at step three to 'present evidence establishing [that] her impairments meet or equal listed impairments.'" *Id*. (quoting *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005)).

Medical equivalence requires an impairment to be at least equal in severity and duration to the criteria of a listed impairment. 20 C.F.R. §§ 404.1526(a), 416.926(a). When an impairment

is not listed, one method of finding equivalence is by comparing the findings associated with that impairment to those of a closely analogous listed impairment and determining whether they are at least of equal medical significance. *Id*. §§ 404.1526(b)(2), 416.926(b)(2). SSR 19-4p "provides specific guidance on how to determine medical equivalency in cases involving headache disorders and in fact requires that they be evaluated under Listing 11.02, the most closely analogous listing." *Lindsay M.*, 2022 WL 612452, at *7 (citing SSR 19-4p, 2019 WL 4169635, at *7). SSR 19-4p specifically recognizes that "while uncommon" headache disorders may medically equal the listing for epilepsy, under 11.02B or 11.02D. SSR 19-4p, 2019 WL 4169635, at *7.[1]

"At the hearing level, '[t]he administrative law judge ... is responsible for deciding the ultimate legal question whether a listing is met or equaled.'" *Lindsay M.*, 2022 WL 612452, at *10 (quoting *Phillip v. Saul*, No. 8:19CV422, 2020 WL 4001162, at *24 (D. Neb. July 15, 2020)); SSR 17-2p, 2017 WL 3928306, at *3. When an ALJ determines at step three that the claimant does not meet or equal a listing, he must explain the evidence supporting that decision, the uncontroverted evidence he chose not to rely on, and any significantly probative evidence he rejected. *Lindsay M.,* at *8 (citing *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996)). "The Tenth Circuit has found that the ALJ's failure to include specific findings at step three may be harmless error only where he 'provides detailed findings at other steps in the analysis that support the step 3 decision in a readily reviewable manner.'" *Id*. (quoting *K.I. v. Kijakazi*, No. 20-1110-DDC, 2021 WL 4149087, at *7 (D. Kan. Sept. 13, 2021)).

However, the obligation to evaluate the relevant evidence does not require the ALJ to place the entire explanation in the step-three discussion. SSR 17-2p indicates that "[g]enerally, a

[1] "Although SSRs do not have the same force and effect as statutes or regulations, they are binding on all of [the SSA's] components in accordance with 20 CFR 402.35(b)(1) and are binding as precedents in adjudicating cases." *Lindsay M.*, 2022 WL 612452, at *7 (quoting *Phillip v. Saul*, 2020 WL 4001162, at *19 (D. Neb. 2020)).

statement that the individual's impairment[s] does not medically equal a listed impairment constitutes sufficient articulation for this finding[.]" SSR 17-2p, 2017 WL 3928306, at *4 (2017). SSR 17-2p further states that "[a]n adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process *will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence* at step 3." *Lindsay M.*, 2022 WL 612452, at *8 (quoting SSR 17-2p, 2017 WL 3928306, at *4). In short, SSR 17-2p generally permits a brief statement that an impairment does not medically equal a listing when the evidence does not reasonably support equivalence, *with the supporting reasoning supplied at later steps*. *See Clifton*, 79 F.3d at 1009–10.

"Under these principles, the ALJ's failure to make a specific finding regarding medical equivalence between Plaintiff's headaches and Listing 11.02 at step three is reversible error unless this Court can determine based on the ALJ's overall findings and analysis that his conclusion is supportable." *Lindsay M.*, 2022 WL 612452, at *8 (citing *Shook v. Barnhart*, 2006 WL 2884083, at *3 (D. Kan. 2006)).[2]

**B. The ALJ's Step Three Analysis**

At step three, the ALJ provided the following analysis regarding Plaintiff's headaches in comparison with Listing 11.02:

> Next, although there is no listing for headaches, pursuant to SSR 19-4p, I compared the claimant's signs and symptoms with listing 11.02 for epilepsy. However, the medical record does not reasonably support a finding of medical equivalence and no acceptable medical source designated to make equivalency findings has concluded that the claimant's impairments medically equal this or any listed impairment.

[2] As articulated by the court in *Linday M.*, "[t]here are ... numerous decisions which hold that an ALJ's failure to make a specific finding as to medical equivalence between a claimant's chronic headaches and listing 11.02 is reversible error." 2022 WL 612452, at *14 (collecting cases).

(Tr. 28).

Plaintiff asserts that this analysis "falls far short of the 10th Circuit's description of what an ALJ's analysis at step three should include," and as such, neither Plaintiff nor the court is able to determine if there was even a scintilla of evidence to support the ALJ's finding (Pl. Br. at 8). While the court agrees that the ALJ's reasoning for lack of equivalence is "bare-bones," the court must determine whether supporting reasoning was supplied at later steps. SSR 17-2p, 2017 WL 3928306, at *4.

Rather than guiding the court to later sections of the ALJ's Decision containing supporting reasoning for the ALJ's step three analysis, Defendant maintains that the ALJ's two-sentence step three analysis satisfied SSR 17-2p by stating that the medical record did not reasonably support equivalence and that no designated medical source had concluded otherwise (Def. Br. 6–7). Defendant appears to assert that the ALJ's brief statement is sufficient because none of the medical and psychological reports or opinions opined that Plaintiff medically equaled a listing; thus, the ALJ did not have the "required documentation" to determine that Plaintiff did not medically equal a listing (Def. Br. at 6).

Defendant, however, misunderstands the present inquiry. Whether or not the record contains sufficient evidence for the ALJ to make a favorable or unfavorable determination regarding equivalence is not the issue. The primary issue at hand is whether the ALJ sufficiently supported his step three conclusion regarding Plaintiff's headaches. To the extent Defendant contends that the ALJ's two sentences regarding equivalence eliminate the need for any supporting explanation elsewhere in the decision, the court disagrees. Although SSR 17-2p generally permits a brief statement at step three, it contemplates that the ALJ's reasoning at later steps will provide

a sufficient basis for judicial review. SSR 17-2p, 2017 WL 3928306, at *4.[3]

Next, the ALJ's finding that no medical source had concluded otherwise is relevant to "*[a]n affirmative finding* of medical equivalence," which requires specified medical support. SSR 17-2p, 2017 WL 3928306, at *3 (emphasis added). At the hearings level, for an ALJ to make an affirmative finding of medical equivalence, the record must contain supporting evidence from at least one of three sources: a prior administrative medical finding by a medical or psychological consultant at the initial or reconsideration level; medical-expert evidence obtained at the hearings level; or a report from the Appeals Council's medical support staff. *Id*. These requirements apply to headache disorders. *See* SSR 19-4p, 2019 WL 4169635, at *7 n.25. Defendant, however, provides no authority stating the lack of supporting evidence from at least one of the sources above is dispositive, or absolves the ALJ's duty to provide detailed findings to support his step three conclusions. Therefore, the ALJ's finding that "no acceptable medical source designated to make equivalency findings has concluded that the claimant's impairments medically equal this or any listed impairment" is insufficient. Detailed findings must still support such a finding. *See* SSR 17-2p, 2017 WL 3928306, at *4.

The court reviewed the ALJ's Decision as a whole and concludes that it does not provide a sufficient basis for meaningful judicial review of the determination that Plaintiff's headaches did not medically equal Listing 11.02B or Listing 11.02D.

1. <u>Listing 11.02B (Paragraph B)</u>

Paragraph B addresses dyscognitive seizures occurring at least weekly for three consecutive months despite adherence to prescribed treatment. 20 C.F.R. pt. 404, subpt. P, app. 1, § 11.02B. SSR 19-4p identifies the evidence relevant to making the comparison between

[3] Defendant's position also makes the court highly skeptical of whether the ALJ applied the correct legal standard; however, it is not fully clear whether the ALJ also held the same incorrect understanding presented by Defendant.

headaches and Paragraph B. 2017 WL 3928306, at *7. The ALJ considers an acceptable medical source's detailed description of a typical headache, including its duration, intensity, and accompanying symptoms; how often headaches occur; whether they persist despite adherence to prescribed treatment; treatment side effects; and resulting functional limitations. *Id*. Functional limitations may include needing to lie down, remain in a dark and quiet room, or accommodate disrupted sleep that affects daytime activities. *Id*.

Plaintiff argues that she has carried her burden of establishing medical equivalence under Listing 11.02B. She relies on her diagnosis of intractable migraines, reports of daily headaches for a year, and continued symptoms despite what she describes as adherence to prescribed medication for more than three months (Pl. Br. 11–12, 15, 17 (citing Tr. 58, 626, 633, 647, 706 and 929)).

When considering the ALJ's Decision as a whole, he does briefly discuss Plaintiff's headaches in later steps. The ALJ's discussion at later steps, however, relied on normal findings concerning cognition, memory, attention, insight, and judgment to discount Plaintiff's allegations of severe memory and concentration deficits, and he limited Plaintiff to simple work in consideration of her headaches (Tr. 30). The court can follow the reasoning concerning those asserted *cognitive* limitations. That discussion, however, does not explain how he evaluated the frequency, duration, intensity, and accompanying symptoms of Plaintiff's headache events; their persistence despite adherence to prescribed treatment; or any additional functional limitations and treatment side effects reflected in the record. SSR 19-4p, 2019 WL 4169635, at *7.

The ALJ's references to imaging results, neurological examinations, lumbar punctures, and the absence of head trauma are also insufficient (Tr. 30). The ALJ's Decision does not explain how those findings, or the description of Plaintiff's intracranial hypertension as benign, bear on the relevant characteristics of her migraine episodes. To the contrary, SSR 19-4p recognizes that

an unremarkable MRI may be consistent with a primary headache disorder because imaging can help exclude other causes of headaches. *Id*. at *4. Nor does the absence of suspected epileptic seizures resolve the equivalence inquiry, as SSR 19-4 specifically states that epilepsy (Listing 11.02) is "the most closely analogous" for evaluating headache disorders, but Plaintiff does not have to establish she has epileptic seizures. *See Id*. at *7.

The ALJ's treatment of the note concerning nighttime symptoms further illustrates the court's inability to follow the ALJ's reasoning. The ALJ observed that Plaintiff's headaches did not wake her at night (Tr. 30). But, as Plaintiff points out, the cited note states, "*[Plaintiff] has been having a headache daily*. It doesn't wake her at night" (Tr. 626) (emphasis added). The report of daily headaches bears directly on frequency. The ALJ relied on the absence of nighttime awakening without explaining how he considered the accompanying report of daily headaches. The court therefore cannot discern whether he accepted that reported frequency, rejected it, or found it insufficient for another reason. An ALJ need not discuss every item of evidence but must address significantly probative evidence he rejects. *Clifton*, 79 F.3d at 1010.

The ALJ's discussion of the state agency opinions likewise does not supply the missing analysis. The ALJ found the physical consultant's light-work assessment somewhat persuasive because it included narrative support and was generally consistent with the record (Tr. 32). This explanation, however, did not identify findings resolving the relevant characteristics of Plaintiff's headaches (*id*.). Similarly, the ALJ's reasons for crediting the psychological consultants' opinions again emphasized normal *cognitive* findings (Tr. 33). Those reasons explain the ALJ's assessment of Plaintiff's mental functioning (i.e., cognition, insight, awareness, and judgment) but do not reveal how he evaluated the other symptoms of her headache episodes relevant to Listing 11.02B.

Accordingly, these later findings do not provide a reviewable explanation for the medical-

equivalence determination under Listing 11.02B. *See Clifton*, 79 F.3d at 1009 ("In the absence of ALJ findings supported by specific weighing of the evidence, [the court] cannot assess whether relevant evidence adequately supports the ALJ's conclusion that impairments did not meet or equal any Listed Impairment, and whether he applied the correct legal standards to arrive at that conclusion.").

2. Listing 11.02D (Paragraph D)

The same deficiencies prevent meaningful review under Listing 11.02D. SSR 19-4p directs the ALJ to consider the same headache-related factors discussed above and additionally determine whether the disorder's overall effects cause a marked limitation in physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself. SSR 19-4p, 2019 WL 4169635, at *7; 20 C.F.R. pt. 404, subpt. P, app. 1, § 11.02D. Although the ALJ addressed Plaintiff's cognitive functioning, his discussion does not adequately explain his assessment of the headaches' other functional effects, including their effects on physical functioning (Tr. 30–33). The court therefore cannot follow his reasoning concerning whether the headaches' overall effects satisfied Paragraph D's marked-limitation requirement.

3. Harmlessness

Defendant argues that any failure to explain the medical-equivalence determination would be harmless because no reasonable factfinder could find equivalence without the qualifying medical support absent from this record (ECF 22 at 7–8). This argument relies on the absence of qualifying medical support without identifying reasoning within the ALJ's Decision demonstrating that the ALJ applied the correct standard. "The Tenth Circuit has found that the ALJ's failure to include specific findings at step three may be harmless error only where he '*provides detailed*

*findings at other steps in the analysis that support the step 3 decision in a readily reviewable manner*.'" *Lindsay M.*, 2022 WL 612452, at *8 (quoting *K.I.*, 2021 WL 4149087, at *7) (emphasis added). For the reasons already articulated, the court does not find harmless error, as the ALJ did not provide detailed findings at other steps that support his two-sentence step 3 determination in a readily reviewable manner.

Because reconsideration of Plaintiff's headaches may affect the RFC assessment, the court does not reach Plaintiff's remaining challenge to that assessment. *See Watkins v. Barnhart*, 350 F.3d 129, 1299 (10th Cir. 2003).

## IV. CONCLUSION AND ORDER

For the reasons above, the Commissioner's decision is REVERSED, and this matter is REMANDED for further administrative proceedings consistent with this Memorandum Decision and Order. Judgment shall be entered in accordance with Fed. R. Civ. P. 58, consistent with the U.S. Supreme Court's decision in *Shalala v. Schaefer*, 509 U.S. 292, 296–304 (1993).

DATED this 29 September 2026.

Cecilia M. Romero

Chief Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah